Gary L. Eastman (CA BAR# 182518)
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Phone: 619.230.1144
Facsimile: 619.230.1194
Attorney for Plaintiff
Matthew Green

FILED

NOV 0 6 2006

CLERK, U.3. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

'06 CV 2453 W    LSP

| | |
|---|---|
| MATTHEW GREEN,<br><br>        Plaintiff,<br><br>-v-<br><br>GUSTAVO GONZALEZ; SUPERIOR CLEANING SUPPLY,<br><br>        Defendants. | ) Case No.:<br>)<br>) COMPLAINT FOR DECLARATORY<br>) JUDGMENT OF PATENT NON-<br>) INFRINGEMENT, PATENT INVALIDITY,<br>) MISUSE OF PATENT, FEDERAL<br>) STATUTORY UNFAIR COMPETITION,<br>) COMMON LAW UNFAIR COMPETITION,<br>) INTERFERENCE WITH BUSINESS<br>) RELATIONS, INTERFERENCE WITH<br>) PROSPECTIVE ECONOMIC ADVANTAGE,<br>) AND DEMAND FOR JURY TRIAL<br>) |

Plaintiff Alleges:

#### Jurisdiction

1. Plaintiff MATTHEW GREEN (herein after "GREEN") is and at all times relevant hereto was, DBA as Dr. Green's (herein after "DR. GREEN'S"), is and at all times herein mentioned was, doing business in the County of San Diego, State of California.  GREEN is, and was at all relevant times, a resident of the State of California, County of San Diego.

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 1

2. Plaintiffs are informed and believe, and on the basis of such information and belief allege, Defendant SUPERIOR CLEANING SUPPLY (herein after referred to as "SCS") is a business entity, form unknown, doing business in the County of Gainesville, State of Florida.

3. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant GUSTAVO GONZALEZ (herein after referred to as "GONZALEZ") is, and was at all times relevant hereto, an officer, director, and/or managing agent of SCS. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant GONZALEZ is, and was at all times relevant hereto, a resident of the State of Florida.

4. The court has jurisdiction of this action because this litigation arises under the Patent Laws of the United States of America, namely *35 U.S.C. § 1 et seq.* The Court has jurisdiction over this action under *28 U.S.C. § 1331* (federal question), and *28 U.S.C. § 1338(a)* (patents).

5. The court has jurisdiction of this action for related state law claims arising out of this litigation. The court has jurisdiction over this action under *28 U.S.C. § 1367(a)* (supplemental jurisdiction).

6. This Court has personal jurisdiction over the Defendants because, on information and belief, Defendants conduct business in the State of California and within this district, including contracts with California corporations and the advertising and sale of products

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 2

within this State and through the Internet to California residents.

7. Venue is proper in this district under *28 U.S.C. §§ 1391(b)* and *1391(c)*.

### General Allegations

8. At all relevant times, Plaintiff GREEN manufactured, marketed, distributed and sold a cleaning compound known as DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER.

9. On or about August 11th 1999 defendant GONZALEZ applied for a United States Patent for a "SMOKER'S PIPE CLEANER AND METHOD OF USE."

10. On or about September 4th 2001 patent number 6,284,056 for a "SMOKER'S PIPE CLEANER AND METHOD OF USE" was issued to Defendant GONZALEZ by the United States Patent and Trademark Office.

11. The registration of the patent number 6,284,056, "SMOKER'S PIPE CLEANER AND METHOD OF USE" (herein after "6,284,056 Patent" or "'056 Patent"), is attached hereto as exhibit "A" and is incorporated herein by reference the same as if set forth verbatim.

12. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that on or about July 23rd 2006 Defendants, through legal counsel, sent a cease and desist letter to Plaintiff GREEN.

13. The cease and desist letter received by Plaintiff GREEN from Defendants is attached hereto as exhibit "B"

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 3

and is incorporated herein by reference the same as if set forth verbatim.

14. In the letter attached hereto as Exhibit "B" Defendants allege that Plaintiff's product DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER is within the scope of the 6,284,056 Patent.

15. Defendants further allege that the manufacture of DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER infringes the 6,284,056 Patent.

16. In the letter attached hereto as Exhibit "B" Defendants demanded that Plaintiff GREEN immediately cease and desist from all advertising, distribution and sale of DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER.

17. In the letter attached hereto as Exhibit "B" Defendants state that without written confirmation from Plaintiff GREEN that he has ceased and desisted from all advertising, distribution and sale of DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER, Defendants will assume that this controversy cannot be resolved without litigation.

### Claim for Relief

#### COUNT I.a. PATENT NON-INFRINGEMENT.

18. Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 17.

19. Defendants have alleged that the 6,284,056 Patent is infringed by Plaintiff's DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product.

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 4

20. Plaintiff, however, asserts that Plaintiff's products do not infringe the claims of the 6284056 Patent.

21. Plaintiff asserts that the DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product manufactured by Plaintiff does not fall within any of the claims of the 6,284,056 Patent.

22. There is a continuing judicable controversy between Plaintiff and Defendants as to Defendants' right to threaten or maintain suit for infringement of the 6,284,056 Patent, and as to the scope and enforceability thereof, and as to whether any of Plaintiffs' products infringes any valid claim thereof.

23. Plaintiffs have not infringed, willfully infringed, contributorily infringed, or induced others to infringe, any claim of the 6,284,056 Patent.

24. Plaintiffs desire a judicial determination of their rights and duties, and declarations by this Court of non-infringement of the 6,284,056 Patent.

**COUNT I.b. PATENT INVALIDITY**

25. Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 24.

26. Defendants have asserted that the 6,284,056 Patent is valid and infringed by one or more of Plaintiff's products.

27. An informational pamphlet entitled "Facts About Salt – History – Production – Uses" published by the Salt Institute is attached hereto as Exhibit "C" and is

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 5

incorporated herein by reference the same as if set forth verbatim.  Salt Institute, Facts About Salt – History – Production – Uses, (1990).

28.  Excerpts from the book "Solve It With Salt: 110 Surprising and Ingenious Uses for Table Salt" written by Patty Moosbrugger are attached hereto as Exhibit "D" and are incorporated herein by reference the same as if set forth verbatim.  Patty Moosbrugger, Solve It With Salt: 110 Surprising and Ingenious Uses for Table Salt 53 (1998).

29.  Plaintiff asserts that alcohol and salt cleaning compounds such as those detailed in the claims for the 6,284,056 Patent are anticipated by at least the above listed references.

30.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that the claims of the 6,284,056 Patent are invalid and therefore cannot be infringed by any of Plaintiff's products.

31.  There is a continuing judicable controversy between Plaintiffs and Defendants as to Defendants' right to threaten or maintain suit for infringement of the 6,284,056 Patent, and as to the validity and enforceability thereof.

32.  Plaintiff asserts that the 6,284,056 Patent is invalid for failing to comply with the patent laws of the United States, including but not limited to 35 U.S.C. §§ 102, 103, 112, and/or 132.

33.  Plaintiffs desire a judicial determination of their rights and duties, and declarations by this Court of invalidity of the 6,284,056 Patent.

### COUNT II. MISUSE OF PATENT

34.  Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 33.

35.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that defendants GONZALEZ and SCS threatened legal action against Plaintiff GREEN in order to remove Plaintiff's DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product from the marketplace.

36.  Plaintiff asserts that Defendants cease and desist letter attached hereto as Exhibit "B" attempting to prevent Plaintiff from all advertising, distribution and sale of the non-infringing DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product demonstrates an attempt by defendants GONZALEZ and SCS to remove competition from the pipe cleaner marketplace through the unlawful use of the 6,284,056 Patent.

37.  Plaintiffs desire a judicial determination of their rights and duties, and declarations by this Court of unenforceability of the 6,284,056 Patent under the doctrine of patent misuse.

## COUNT III.  FEDERAL STATUTORY UNFAIR COMPETITION

38. Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 37.

39. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have mischaracterized Plaintiff's cleaning products and services as an infringement of the 6,284,056 Patent.

40. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants' mischaracterization of Plaintiff's products has and will continue to lead to the loss of reputation and goodwill associated with Plaintiff's cleaning products and services.

41. Plaintiff is informed and believes, and on the basis of such information and belief alleges, Defendants' mischaracterization of Plaintiff's DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product constitutes Federal Unfair Competition under *15 U.S.C. §1125(a),* commonly known as *§42(a) of the Lanham Act.*

## COUNT IV.  COMMON LAW UNFAIR COMPETITION

42. Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 41.

43. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have mischaracterized Plaintiff's cleaning products and services as an infringement of the 6,284,056 Patent.

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

44.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants' mischaracterization of Plaintiff's products has and will continue to lead to the loss of reputation and goodwill associated with Plaintiff's cleaning products and services.

45.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, Defendants' mischaracterization of Plaintiff's DR. GREEN'S LIGHTNING QUICK CHALICE CLEANER product constitutes Common Law Unfair Competition.

**COUNT V.  INTERFERENCE WITH BUSINESS RELATIONS**

46.  Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 45.

47.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have mischaracterized Plaintiff's cleaning products and services as an infringement of the 6,284,056 Patent.

48.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that some number of Plaintiff's current customers were among those to whom Defendants mischaracterized Plaintiff's products and services.

49.  Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants were aware the mischaracterizations of Plaintiff's

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 9

products and services were reaching current customers of Plaintiff.

50. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants intended the mischaracterizations of Plaintiff's products and services to discourage current customers from using Plaintiff's products and services.

51. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that some of Plaintiff's current customers were discouraged from using Plaintiff's products and services by Defendants' mischaracterization of Plaintiff's cleaning products and services.

52. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that mischaracterizations by Defendants of Plaintiff's cleaning products and services by the defendants were the cause of some number of lost sales by Plaintiff.

**COUNT VI. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

53. Plaintiff re-alleges and incorporates herein by reference, the same as if set forth verbatim, the allegations contained in paragraphs 1 through 52.

54. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have mischaracterized Plaintiff's cleaning products and services as an infringement of the 6,284,056 Patent.

55. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that some number

of Plaintiff's potential future customers were among those to whom Defendants mischaracterized Plaintiff's products and services.

56. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants were aware the mischaracterizations of Plaintiff's products and services were reaching potential future customers of Plaintiff.

57. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants intended the mischaracterizations of Plaintiff's products and services to discourage potential future customers from using Plaintiff's products and services.

58. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that some of Plaintiff's potential future customers were discouraged from using Plaintiff's products and services by Defendants' mischaracterization of Plaintiff's cleaning products and services.

59. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that mischaracterizations by Defendants of Plaintiff's cleaning products and services by the defendants were the cause of some number of lost sales by Plaintiff.

**WHEREFORE, plaintiff prays for relief as follows:**

a. The Court declare that United States Patent number 6,284,056, and each claim thereof, is invalid;

b. The Court declare that United States Patent number 6,284,056, and each claim thereof, is not infringed by Plaintiff;

c. The Court declare that United States Patent number 6,284,056 is unenforceable;

d. A preliminary and permanent injunction issue against Defendants' further assertion of allegations of patent infringement against Plaintiff;

e. Plaintiffs be awarded damages in an amount to be determined by the Court;

f. Plaintiff be awarded his attorneys' fees.

g. Plaintiff be awarded his costs of suit herein;

h. That a determination be made that this is an exceptional case and that Plaintiff be awarded his reasonable attorneys' fees and costs; and

i. Plaintiff be awarded such other and further relief as the Court deems just and proper.

Dated: November _3_, 2006

_____
Gary L. Eastman (CA BAR# 182518)
Attorney for Plaintiff Matthew Green

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 12

## JURY TRIAL DEMANDED

Plaintiff hereby requests trial by jury on all counts of this complaint.

Dated: November 3 , 2006

_____

Gary L. Eastman (CA BAR# 182518)
Attorney for Plaintiff Matthew Green

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY, MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION, INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DEMAND FOR JURY TRIAL

- 13

EXHIBIT "A"

Akerman Senterfitt
ATTORNEYS AT LAW

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Esperante Building
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida 33401-6183

Post Office Box 3188 mail
West Palm Beach, Florida 33402-3188

www.akerman.com

561 653 5000 tel     561 659 6313 fax

July 23, 2006

Stephan Pendorf
561 671 3669
stephan.oendorf@akerman.com

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**(7004 1350 0004 5768 4253**

Matthew Green
President
Dr. Green's
5875 Dessert View Drive
La Jolla, CA  92037

> Re:  **Gustavo Gonzalez v. Dr. Green, US Patent 6,284,056**
>     **Our Ref.: 3919.003**

ATTN:  Matthew Green, President

Dear Mr. Green:

Please be advised that we represent Gustavo Gonzalez and Superior Cleaning Supply, Inc. in regard to intellectual property matters.

As I am sure you are aware, Gustavo Gonzalez is the inventor and patentee of a proprietary product used to clean smoker's pipe, which is the subject of U.S. Patent No. 6,284,056 entitled "Smoker's Pipe Cleaner and Method of Use", issued September 4, 2001. A copy of the patent is attached for your reference.

It has recently come to our attention that you are marketing "Dr. Green's Lightning Quick Chalice Cleaner" which is squarely within the scope of the patent. It is our conclusion, based on our preliminary analysis, that your "Lightning Quick Chalice Cleaner" is clearly within the scope of coverage received in Mr. Gonzalez's patent.

{WP3215(12;1)}

Matthew Green
July 23, 2006
Page 2

---

In view of the foregoing we must warn you that the manufacture, use and sale by you of "Dr. Green's Lightning Quick Chalice Cleaner" will render you liable as an infringer of U.S. Patent No. 6,284,056 under the provisions of 35 U.S.C. §271(a). An intentional infringer (one who infringes after being put on notice of infringement) is liable to treble damages. On behalf of our client, we demand that you immediately cease and desist from all advertising, distribution and sale of your imitation "Dr. Green's Lightning Quick Chalice Cleaner." Further, we demand a full and accurate accounting of all of the units of "Dr. Green's Lightning Quick Chalice Cleaner" that have been sold by you in the United States.

Further, Mr. Gustavo Gonzalez is owner of a number of pending patent applications covering other variations of cleaning products and processes of manufacture.

If we do not receive written assurance from you by five o'clock p.m. on August 13, 2006 confirming that you have ceased and desisted from all advertising, distribution and sale of your infringing products together with a full and accurate accounting of all of the imitation pipe cleaners that have been sold in the United States, we will assume that this matter can not be amicably resolved without litigation.

We await your prompt response.

Sincerely yours,

**AKERMAN SENTERFITT**

Stephan Pendorf

(WP321502:1)

EXHIBIT "B"

US006284056B1

## (12) United States Patent
### Gonzalez

(10) Patent No.: **US 6,284,056 B1**
(45) Date of Patent: **Sep. 4, 2001**

(54) **SMOKER'S PIPE CLEANER AND METHOD OF USE**

(76) Inventor: **Gustavo M. Gonzalez**, P.O. Box 142465, Gainesville, FL (US) 32614

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/372,198**

(22) Filed: **Aug. 11, 1999**

**Related U.S. Application Data**

(60) Provisional application No. 60/096,091, filed on Aug. 11, 1998.

(51) Int. Cl.[7] ............................... B08B 3/08; B08B 9/027; C11D 7/10; C11D 7/26

(52) U.S. Cl. ................................ 134/40; 134/39; 134/42; 510/109; 510/365; 510/366; 510/397; 510/419; 510/197; 510/201; 510/238; 510/239; 510/240; 510/245; 510/253; 510/269; 510/271

(58) Field of Search ..................................... 510/109, 365, 510/366, 397, 419, 197, 201, 238, 239, 240, 245, 253, 269, 271; 134/42, 39, 40

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,496,667 | * | 1/1985 | Reichgott et al. ...................... | 521/26 |
| 4,877,459 | * | 10/1989 | Cockrell, Jr. et al. .................. | 134/40 |
| 5,858,106 | * | 1/1999 | Ohmi et al. .............................. | 134/1 |

* cited by examiner

*Primary Examiner*—Mark Kopec
*Assistant Examiner*—Brian P. Mruk
(74) *Attorney, Agent, or Firm*—Pendorf & Cutliff

(57) **ABSTRACT**

A composition useful for removal of organic deposits from a ceramic, glass, plastic, or metal substrate, and a method of use thereof. In a preferred embodiment, the invention pertains to a composition for cleaning an organically fouled smoking apparatus such as a pipe, a cigarette holder, or a water pipe, and to a process whereby the smoking apparatus is cleaned and disinfected.

**5 Claims, 1 Drawing Sheet**

## CLEANING TIMES

Legend: ▨ SOAKING TIME (IN MINUTES)  ▧ SCRUBBING TIME (IN MINUTES)

| | FORMULA 420 | PURPLE POWER** | GRUNGE OFF | DR. GREENS |
|---|---|---|---|---|
| ▨ SOAKING TIME (IN MINUTES) | 0 | 3 | 10 | 5 |
| ▧ SCRUBBING TIME (IN MINUTES) | 1 | 45 | 55 | 60 |

**throughout testing, 25% of the time Purple Power did require a few minutes of brushing, though they claim it is not necessary.

**U.S. Patent**                     Sep. 4, 2001                     **US 6,284,056 B1**



## CLEANING TIMES

AVERAGE CLEANING TIME (IN MIN.)

Legend: SOAKING TIME (IN MINUTES); SCRUBBING TIME (IN MINUTES)

|                              | FORMULA 420 | PURPLE POWER** | GRUNGE OFF | DR. GREENS |
|------------------------------|-------------|----------------|------------|------------|
| SOAKING TIME (IN MINUTES)    | 0           | 3              | 10         | 5          |
| SCRUBBING TIME (IN MINUTES)  | 1           | 45             | 55         | 60         |

**throughout testing, 25% of the time Purple Power did require a few minutes of brushing, though they claim it is not necessary.

US 6,284,056 B1

**1**

### SMOKER'S PIPE CLEANER AND METHOD OF USE

#### CROSS REFERENCE TO RELATED APPLICATIONS

This application discloses and claims subject matter disclosed in provisional application Ser. No. 60/096,091, filed Aug. 11, 1998. The entire disclosure of the previous application is incorporated herein by reference

#### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a composition useful for removal of organic deposits from a ceramic, glass, plastic, or metal substrate, and to a method of use thereof. In a preferred embodiment, the invention pertains to a composition for cleaning an organically fouled smoking apparatus such as a pipe, a cigarette holder, or a water pipe, and to a process whereby the smoking apparatus is cleaned and disinfected.

2. Description of the Related Art

The use of a pipe cleaner is known in the prior art. More specifically, pipe cleaners heretofore devised and utilized for the purpose of removing carbon residue and other organic scale for tobacco smoke are known to consist basically of familiar, expected, and obvious structural configurations, notwithstanding the myriad of designs encompassed by the crowded prior art which has been developed for the fulfillment of countless objectives and requirements.

Smoking devices generally comprise a receptacle for the tobacco, a mouthpiece, and a stem connecting the receptacle to the mouth piece. The stem assembly may be a simple longitudinal stem or a more complex shape such as a spiral. All types of smoking apparatus, whether they are ceramic, glass, plastic or metal, collect organic residue such as tar and scale on these internal surfaces over time. The scale accumulates in the stem and mouthpiece and eventually blocks the flow of smoke between the receptacle and mouthpiece. If not cleaned on a regular basis the pipe begins to draw poorly and eventually becomes clogged and unusable. Pipe replacement can become costly and expensive, thus pipe cleaning is considered routine maintenance for preserving a pipe in good working order.

Currently, smokers have two main methods of cleaning their smoking devices—dry and wet. Dry cleaning involves the well-known "pipe cleaner". This method is not suitable where the stem is long or convoluted. Wet cleaning may be active—involving a brush and a cleaning solution, or it may be passive—wherein the smoking device is allowed to soak in a cleaning solution.

By way of Example, the prior art includes U.S. Pat. No. 5,209,248 to Slade, Sr., disclosing a smoker's pipe filling and cleaning system. The cleaning system includes a battery operated, motor driven brush centrally mounted within an ash receptacle section. A pressure switch activates a motor causing the brush to rotate. The pipe bowl is simply inverted over the brush and pressed downward. The rotating brush removes debris from the pipe without scarring the pipe, the debris falling into and being captured in a heat resistant receptacle section surrounding the brush. This system is

**2**

most useful for removing tobacco from the bowl of a pipe. This system does not address cleaning of he stem nor the mouth piece. Thus the problem of blockage would still exist.

U.S. Pat. No. 4,188,959 to Karalius discloses a brush-like device as a pipe cleaner having a first end, a second end and a handle section located between the first and second end. The pipe cleaner apparatus is constructed of bendable steel which allows it to assume various configurations for cleaning the bowl and the stem.

U.S. Pat. No. 2,306,622 to Gordon discloses an electronic motor driven pipe cleaner comprised of a thin disc-like brush or buffer wheel mounted transversely to the rotary axis of a small electric motor. The wheel is spun within the bowl of the pipe for cleaning. Again, this pipe cleaner only cleans the tobacco receptacle.

In view of the difficulty of mechanical type cleaners discussed above to access or adequately clean internal surfaces of a smoking apparatus, such as the internal surface of the mouthpiece or stem, there has been a recent trend to employment of liquid cleansers. Some liquid cleansers have been especially developed to break down and remove residue or scale in the stem and mouthpiece of the pipe. However, even these liquid cleansers merely provide a pre-soaking treatment and require brushing to remove deposits. Thus, areas not reached by a brush are not cleaned. This problem becomes acute in the case of convoluted or sharp angled stems or other pieces.

Purple Power liquid pipe cleanser, available through the internet, has sodium hydroxide as a main active ingredient, and requires that the piece being cleaned be soaked for at least 30 minutes, more usually 45 to 60 minutes, in a solution of Purple Power and water. Grunge Off® powder, also available through the internet, comes in the form of a concentrated powder. The powder is dissolved in hot water for about 45 minutes, and a pipe is soaked in the resulting solution and then scrubbed with a brush to remove scale. Another such liquid cleanser is Dr. Greens chalice cleanser, also available through the internet. This cleanser also requires mixing with hot water, soaking and brushing of the pipe. Each of these product requires soaking for at least about one-half hour and constant scrubbing for satisfactory scale removal, which is particularly difficult to achieve in hard-to- reach places.

The present inventor became familiar with the various commercially available liquid pipe cleansers, and felt that the long period of soaking was a significant inconvenience. Determined to find a better liquid pipe cleanser, the inventor began experimenting with various household detergent products, such as glass cleaners, tile cleaners, carpet cleaners, etc. He quickly realized that most of these products could be eliminated from consideration due to the unpleasant and possibly toxic residues left behind after cleaning.

For example, U.S. Pat. No. 5,858,106 to Ohmi et al. teaches a cleaning liquid comprised of pure water, isopropyl alcohol, and hydrofluoric acid, ammonium fluoride, or potassium fluoride. The cleaner is used to peel organic films such as photoresists off of a semiconductor. The cleaning liquid is used together with ultrasound. This cleaner would be potentially toxic, and would be difficult for the average consumer to use.

US 6,284,056 B1

3

U.S. Pat. No. 5,522,580 to Varner, Jr. et al. teaches a method for removing stains from carpets, upholstery and other bulky items. The cleaner consist of an aqueous composition of hydrogen peroxide, isopropyl alcohol and deionized water. Experimentation has shown that hydrogen peroxide will not remove the scale.

Another cleaner is disclosed in U.S. Pat. No. 5,041,235 to Kilbarger. This patent discloses a liquid hard surface cleaner for porous surfaces. The composition contains a surfactant, a synthetic hydrocarbon oil and an aliphatic alcohol. This composition, if used for cleaning a pipe, would leave a residue on the internal surfaces of the pipe which could produce harmful fumes during subsequent smoking use.

Finally, U.S. Pat. No. 4,496,667 to Reichgott et al. discloses cleaning organically fouled anion exchange resins by first pre-soaking the resins in a brine-caustic solution for one hour, rinsing with distilled water, soaking in a brine-caustic 30% isopropanol solution for one hour, rinsing, and repeating the second soaking step. The use of a one to four carbon monohydric alcohol in the second soaking step was found to provide a 100% improvement in resin removal. This process is both time-consuming (taking at least three hours) and complex, and thus does not provide a solution to the problem addressed by the inventor.

Therefore, it can be appreciated that there exists a need for a new and improved method for cleaning and disinfecting a smoker's pipe capable of removing organic scaling on the smoking apparatus quickly and in a single cleaning cycle.

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a new and improved smoker's pipe cleaner which represents a vast improvement over the above-discussed pipe cleaners.

It is another object of the present invention to provide a new and improved smoker's pipe cleanser and method of using same.

It is further object of the present invention to provide a new and improved smoker's pipe cleanser and method of using same which is a durable and stable composition, and formulated of ingredients which are natural and non-toxic in the intended environment of use.

Still yet another object of the present invention is to provide a new and improved liquid smoker's pipe cleanser which achieves a cleaning and disinfecting in a much shorter time 20 to 60 seconds, and without scrubbing, as compared to conventional liquid pipe cleansers requiring 30 to 60 minutes of soaking followed by scrubbing.

These and other objects have been accomplished by the development of a cleansing composition which comprises, as main active ingredients, (a) an organic solvent, preferably a one to five carbon alcohol, most preferably isopropyl alcohol, (b) an inorganic salt in crystalline form, preferably a sodium halide, which from a cost perspective is most preferably sodium chloride, and (c) water. The alcohol:water ratio in the final composition is preferably in the range of from 9:1 to 2:1, preferably 8:1 to 5:1.

Surprisingly, superior cleaning can be achieved in a very short period of time (about 20 seconds), and without scrubbing, due to the interaction of the alcohol, the briny salt/water combination, and the crystalline salt. The crystal-

4

line salt imparts a mechanical cleaning effect and supplements the chemical effects of the alcohol and brine. The combination of the alcohol, brine and crystalline salt produces an unexpectedly rapid and superior de-scaling and disinfecting of the internal surfaces of a smoking device, and can produce excellent results in as little as 20 seconds, and usually in less than one minute. This represents a significant improvement over the prior art cleansing solutions, which required a minimum of one-half hour to soak, and which are not designed to disinfect. The prior art cleansing solutions are thus not only comparatively ineffective in cleaning and santitization ability, but they are annoying to use, and further require large quantities in order to immerse the device being cleaned, and thus are associated with significant cost.

Further, in accordance with the present invention it is only necessary to expose the internal surfaces of the smoking device to the cleansing composition. This represents a significant saving over cleansing compositions which instruct the user to immerse the entire smoking device in the cleansing solution.

It has been found to be an advantageous property of the composition of the present invention that the salt, which serves as a mechanical abrasive, does not clog the interior surfaces of the smoking device, this being due to the water solubility of the salt resulting in the complete removal of any residual salt during the final step of rinsing the smoking device after cleaning. Any other solid abrasives, in comparison, would stick to the organic deposits in the interior surfaces of the smoking device and clog even zigzagged internal passages.

It has also been surprisingly found that the composition of the present invention has a very high disinfecting property, this believed to be attributable to the high concentration of alcohol.

Further yet, the simplicity, speed, and effectiveness of the present cleansing composition causes smokers to clean their smoking devices more frequently, resulting in more pleasant and healthier smoking experience.

In a preferred embodiment, the cleansing composition preferably comprises about 25 to 55 wt. % alcohol and about 20 to 49 wt. % of crystalline salt. The composition further includes from about 0.01 to 07 wt. % fragrance, from about 0.01 to 0.07 wt. % dye, and distilled water as the balance of the composition, preferably in an amount of 10 to 50 wt. % of the total composition.

Where desired, surfactants may be added in amounts of from 0.5 to 3 wt. %, a preferred surfactant being octoxynol-9.

There has thus been outlined, rather broadly, the more important features of the invention in order that the detailed description thereof that follows may be better understood and in order that the present contribution to the art may be better appreciated. There are, of course, additional features of the invention that will be described hereinafter and which will form the subject matter of the claims appended hereto.

In this respect, before explaining at least one embodiment of the invention in detail, it is to be understood that the invention is not limited in its application to the details of use and to the components being acted upon set forth in the following description. The invention is capable of acting

US 6,284,056 B1

**5**

upon other embodiments and of being practiced and carried out in various ways. Also, it is to be understood that the phraseology and terminology employed herein are for the purpose of descriptions and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily be utilized as a basis for the formulation of other compounds, methods and systems for carrying out the several purposes of the present invention. It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.

These together with other objects of the invention, along with the various features of novelty which characterize the invention, are pointed out with particularity in the claims annexed to and forming a part of this disclosure. For a better understanding of the invention, its operating advantages and the specific objects attained by its uses, reference should be had to the descriptive matter in which there is illustrated preferred combination of ingredients of the invention.

### BRIEF DESCRIPTION OF THE DRAWING

The invention will be better understood and objects other than those set forth above will become apparent when consideration is given to the following detailed description thereof. Such description makes reference to the annexed drawing wherein:

FIG. 1 is a graphic illustration of the cleaning time variance between the present cleanser and commercially available cleansers.

### DETAILED DESCRIPTION OF THE INVENTION

The cleansing composition of the present invention comprises, as main active ingredients, an organic solvent, preferably a one to five carbon alcohol, most preferably isopropyl alcohol, and an inorganic salt in crystalline form, preferably a sodium halide, which from a cost perspective is most preferably sodium chloride. Salt has a high solubility in water, and a low solubility in alcohol. For example, the solubility of sodium chloride in ethyl alcohol at room temperature (25° C.) is only 0.065 g/100 g alcohol. The solubility in methyl alcohol is 1.4 g/100 g alcohol.

Due to the high solubility of salt in water (and poor solubility in alcohol), as the proportion of alcohol is increased, the lower the amount of salt needed to ensure presence of crystalline salt in the final composition. As the proportion of water is increased (and the proportion of alcohol is correspondingly decreased), the proportion of salt must also be increased in order to ensure the presence of inorganic salt in crystalline form in the final composition.

Due to the presence of undissolved salts in the composition of the present invention, the composition is referred to as a composition and not as a solution.

The proportion of water which may be present in the final composition and be within the scope of the invention can be functionally determined. If insufficient water is present, there is an insufficient formation of brine and the effectiveness of the cleansing composition is reduced. As the pro-

**6**

portion of water is increased, the water content will eventually reach a point at which the solubility for salt is too great, excessive amounts of salt will dissolve, and crystals will not be present in the cleansing composition. Accordingly, the alcohol:water ratio in the final composition is preferably in the range of from 9:1 to 2:1, preferably 8:1 to 5:1.

Surprisingly, superior cleaning can be achieved in a very short period of time (20–60 seconds) due to the interaction of the alcohol, the briny salt/water combination, and the crystalline salt. The crystalline salt imparts a mechanical cleaning effect and supplements the chemical effects of the alcohol and brine. The combination of the alcohol, brine and crystalline salt produces an unexpectedly rapid and superior de-scaling and disinfecting of the internal surfaces of a smoking device, and can produce excellent results in as little as 20–60 seconds without brushing. This represents a significant improvement over the prior art cleansing solutions, which required a minimum of one-half hour of soaking, followed by scrubbing, and which are not designed to disinfect.

Further, in accordance with the present invention it is only necessary to expose the internal surfaces of the smoking device to the cleansing composition. This represents a significant saving over cleansing compositions which instruct the user to immerse the entire smoking device in the cleansing solution.

In a preferred embodiment, the cleansing composition preferably comprises about 25 to 55 wt. % alcohol and about 20 to 49 wt. % of crystalline salt. The composition further includes from about 0.01 to 07 wt. % fragrance, from about 0.01 to 0.07 wt. % dye, and distilled water as the balance of the composition, preferably in an amount of 10 to 50 wt.W of the total composition.

Where desired, surfactants may be added in amounts of from 0.5 to 3 wt. %, including surfactants having the formula alpha-4-(1,1,3,3-tetramethylbutyl)phenyl-omega-hydroxypoly(oxy-1,2-ethanediyl) (Octoxynols), most preferably octoxynol-9. Such preferred surfactants include the TRITON.RTM. X series, such as TRITON.RTM. X-100 and TRITON.RTM.X-305, available from Rohm & Haas Co., Philadelphia, Pa., and the Igepal CA series from GAF Corp., New York, N.Y.

Preferred formulations of the cleanser composition will be described below in the context of a smoker's pipe cleanser embodying the principles and concepts of the present invention.

The present invention, the smoker's pipe cleanser is comprised of a mixture of specific ingredients. Such ingredients in their broadest context include an organic solvent, preferably an alcohol; fine granules of a solid material, preferably a salt which is at least partially in crystalline form; water, dye and fragrance. This unique combination of ingredients possesses unexpectedly superior organic residue removal and sterilization properties as compared to properties possessed by the several ingredients individually.

Specifically, the present invention provides a pipe cleansing composition comprising a mixture of an organic solvent, an inorganic salt and water. Fragrance and color are inert with respect to cleaning formulation, and are added to the

US 6,284,056 B1

**7**

composition to create a recognizable appearance and smell, and to make the composition more appealing to the consuming public.

The applicant has found that pipes are quick and easily cleaned and made free of organic residue and scale when these pipe foulants are acted on with a composition consisting of an alcohol, a solid salt and water.

Exemplary organic solvents which can be used in the present invention have the following physical-chemical characteristics:

| | | |
|---|---|---|
| Ethanol | $CH_3CH_2OH$ | mwt. 46.0 |
| Methanol | $CH_3OH$ | mwt. 32.03 |
| Isopropanol | $CH_3CHOHCH_3$ | mwt. 60.09 |

Exemplary inorganic salts which can be used in the present invention have the following physical-chemical characteristics:

| | | | | |
|---|---|---|---|---|
| Sodium Chloride | NaCl | mwt. | 58.4428 | sp.gr. 2.165 |
| Sodium Bromide | NaBr | mwt. | 102.90 | sp.gr. 3.203 |
| Magnesium Bromide | $MgBr_2$ | mwt. | 184.13 | sp.gr. 3.72 |
| Magnesium Chloride | $MgCl_2$ | mwt. | 95.22 | sp.gr. 2.316 |
| Potassium Chloride | KCL | mwt. | 74.54 | sp.gr. 1.984 |
| Potassium Bromide | $KBr_2$ | mwt. | 119.01 | sp.gr. 2.75 |
| Zinc Chloride | $ZnCl_2$ | mwt. | 136.30 | sp.gr. 2.91 |

The cleansing composition of the present invention in one form has from 25 to 55 wt. % organic solvent based on the total composition, from 20 to about 49 wt. % of inorganic salt, at least some of which is in a solid (crystalline) form, from about 0.01 to 2 wt. % of the composition of a fragrance, from about 0.01 to 2 wt. % of the composition of a dye, and from about 10 to 20 wt. % of the composition of distilled water.

The present invention in another form has an organic solvent comprising from 20 to about 30 wt. % of the total composition, an inorganic salt comprising from 20 to about 49 wt. % of the composition, octoxynol-9 comprising from to about 0.5 to 3 wt. % of the composition, a fragrance comprising from about 0.01 to 2 wt. % of the composition, a dye comprising from about 0.01 to 2 wt. % of the composition, and distilled water comprising from about 40 to 70 wt. % of the composition.

The present invention will be better understood from the examples which follow. The below examples are illustrative of the preferred organic solvent and inorganic salt, and are intended to be illustrative only and not meant to unduly limit the scope of the invention. Unless otherwise indicated, percentages are on a percentage of composition basis.

### EXAMPLE I

A smoker's pipe cleanser was prepared having the following formulation.

**8**

| Component | wt. % |
|---|---|
| Isopropyl Alcohol | 47 |
| Sodium Chloride | 37 |
| Deionized water | 13 |
| Fragrance | 1.5 |
| Dye | 1.5 |
| Total | 100 |

The composition was prepared by combining the organic solvent, the water, the fragrance and dye with stirring until well blended. Then the finely divided salt crystals were slowly added, and again stirred to allow a small amount of the salt to dissolve into the solution. After preparation the composition remained stable.

The composition was shaken then poured into the stem of a glass pipe, the ends of the pipe were sealed by finger pressure, and the pipe was vigorously agitated for about one minute. Shaking the composition allowed the organic salt to be evenly disbursed within the solution. The organic residue and scale deposited along the interior of the pipe was removed without damage to the pipe during each test. The identical composition was poured into an acrylic pipe, the ends were sealed by finger pressure, and the pipe was vigorously agitated for about one minute. In testing the composition with acrylic pipes it was noted that cracking occurred in the pipe about 40k of the time. The composition was tested on ceramic and metal pipes with no harm to the pipes.

### EXAMPLE II

A smoker's pipe cleanser was prepared having the following formulation.

| Component | % wt. |
|---|---|
| Isopropyl Alcohol | 37 |
| Sodium Chloride | 37 |
| Deionized water | 23 |
| Fragrance | 1.5 |
| Dye | 1.5 |
| Total | 100 |

The composition was prepared by combining the organic solvent, the water, the fragrance and dye with stirring until well blended. Then finely divided salt crystals were slowly added, and the mixture was again stirred to allow a small amount of the salt to dissolve into the solution. It was noted that the increased amount of water caused a greater amount of salt to dissolve, but some salt remained in crystalline form. After preparation the composition remained stable.

The composition was shaken then poured into the stem of a glass pipe, the ends of the stem were sealed with finger tip pressure, and the stem was vigorously agitated for about one minute. The organic deposit and scale along the interior of the pipe was removed without damage to the pipe during each test. The identical composition was poured into an acrylic pipe and the pipe was vigorously agitated for about one minute. It was noted that acrylic pipes cracked about 30% of the time.

US 6,284,056 B1

**9**

### EXAMPLE III

A smoker's pipe cleanser was prepared having the following formulation.

| Component | % wt. |
|---|---|
| Isopropyl Alcohol | 27 |
| Sodium Chloriae | 37 |
| Dionized water | 33 |
| Fragrance | 1.5 |
| Dye | 1.5 |
| Total | 100 |

The composition was prepared by combining the organic solvent, the water, the fragrance and dye with stirring until well blended. Then finely divided salt crystals were slowly added, and the mixture was stirred to allow a small amount of the salt to dissolve into the aqueous phase. After preparation the composition remained stable.

The composition was shaken then poured into the stem of a glass pipe, the ends of the stem were sealed with finger pressure, and the stem was vigorously agitated for about one minute. The organic deposit and scale along the interior of the pipe was removed without damage to the pipe during each test. The reduction in organic solvent reduced the amount of inorganic salt available as an abrasive in the composition. The identical composition was poured into an acrylic pipe and vigorously agitated for about one minute. In testing the composition with acrylic pipes it was noted that cracking occurred in the pipe 25% of the time.

### EXAMPLE IV

A smoker's pipe cleanser was prepared having the following formulation.

| Component | % wt. |
|---|---|
| Isopropyl Alcohol | 25 |
| Sodium Chloride | 37 |
| Deionized water | 35 |
| Fragrance | 1.5 |
| Dye | 1.5 |
|  | 100 |

The composition was prepared by combining the organic solvent, the water, the fragrance and dye with stirring until well blended. Then finely divided salt crystals were slowly added, and the mixture was again stirred to allow a small amount of the salt to dissolve into the aqueous phase. After preparation the composition remained stable.

The composition was shaken then poured into the stem of a glass pipe, the ends of the stem were sealed with finger pressure, and the stem was vigorously agitated for about one minute. The organic deposit and scale along the interior of the pipe was removed without damage to the glass pipe stem during each test. The identical composition was poured into an acrylic pipe and vigorously agitated for about one minute. In testing the composition with acrylic pipes it was noted that cracking occurred in the pipes about 22% of the time. Further, the cleaning action of the organic solvent was reduced.

**10**

The applicant continued testing to find a composition that completely eliminated cracking of the acrylic pipe.

### EXAMPLE V

A smoker's pipe cleanser was prepared having the following formulation.

| Component | wt. % |
|---|---|
| Isopropyl Alcohol | 18 |
| Sodium Chloride | 37 |
| Deionized water | 39.5 |
| Octoxynol-9 | 2.5 |
| Fragrance | 1.5 |
| Dye | 1.5 |
| Total | 100 |

The composition was prepared by combining the organic solvent, Octoxynol-9, the water, the fragrance and dye with stirring until well blended. Then finely divided salt crystals were slowly added, and stirring was continued to allow a small amount of the salt to dissolve into the aqueous phase. After preparation the composition remained stable.

The composition was shaken then poured into the stem of a glass pipe, the ends of the stem were sealed with fingertip pressure, and the stem was vigorously agitated for about one minute. The organic residue along the interior of the pipe was removed without damage to the pipe during each test. The identical composition was poured into an acrylic pipe and vigorously agitated for about one minute. In testing the composition with acrylic pipes it was noted that cracking reduced now to where about 10% of the cleaned acrylic pipes cracked but the cleaning time had been slightly increased. In view of the increase in time needed to clean the pipe, it wad decided to conduct further experimentation to find a faster acting formulation.

### EXAMPLE VI

A smoker's pipe cleanser was prepared having the following formulation.

| Component | wt. % |
|---|---|
| Isopropyl Alcohol | 17.6 |
| Sodium Chloride | 37 |
| Deionized water | 39.5 |
| Octoxynol-9 | 2.9 |
| Fragrance | 1.5 |
| Dye | 1.5 |
| Total | 100 |

The composition was prepared by combining the organic solvent, Octoxynol-9, the water, the fragrance and dye with stirring until well blended. Then the finely divided salt crystals were slowly added, and again stirring to allow a portion of the salt to dissolve into the aqueous phase. After preparation the composition remained stable.

The composition shaken then poured into the stem of a glass pipe and vigorously agitated for about one minute. The organic deposit and scale along the interior of the pipe was

US 6,284,056 B1

**11**

removed without damage to the pipe during each test. The same composition was poured into an acrylic pipe and the pipe was vigorously agitated for about one minute. It was noted that cracking was eliminated and the cleaning time of this composition was equivalent to the cleaning time in Example I. It appeared that the addition of octoxynol-9 supplemented the scale removal and cleaning action, and that the reduction in isopropyl alcohol concentration overcame the problem of cracking of acrylic pipes.

DISCUSSION

The results reported in Example 1 indicate that higher concentrations of the organic solvent work best in pipes made of glass, ceramic and metal. However it was noted that a high concentration of the organic solvent was harsh and harmful to pipes made of acrylic.

The results reported in Example VI indicate that reduced levels of the organic solvent in combination with the octoxynol-9 yield the same cleaning results of Example I, but without harm to acrylic.

The composition of the present invention thus facilitates the quick, efficient and simple cleaning of pipes—all without a brush —eliminating the conventional time-consuming process which consists of soaking for at least one half hour followed by scrubbing with a brush and which does not result in sterilization of the device. The inventive composition is simply poured into the pipe either through the bowl or the mouth piece. The composition is agitated within the pipe for about one minute. The action of agitating the composition within the pipe allows the composition to have complete contact with the entire interior surface of the pipe. The inorganic salt, undissolved in the organic solvent acts as an abrasive and scours the interior walls of the pipe stem, mouth piece and bowl. The action of the inorganic salt against the interior surface of the pipe facilitates removal of the accumulated scale and organic residue, which is softened by the organic solvent. Further, the organic solvent disinfects any potentially harmful germs and bacteria within the pipe. The final outcome is a clean pipe that had been disinfected and deodorized and, depending upon addition of fragrance, a pipe which is pleasantly scented.

The organic solvents and inorganic salts preferably used in the present invention are all natural and non-toxic. After cleaning the pipe the composition may be disposed of by pouring down a sink. The material is easily washed down the drain because the composition is highly soluble in water.

As to the manner of usage and operation of the present invention, the same should be apparent from the above description. Accordingly, no further discussion relating to the manner of usage and operation will be provided.

With respect to the above description then, it is to be realized that the optimum proportional relationships for the ingredients of the composition, to include variations amounts of components by weight of the entire composition and manner of intermixing are deemed readily apparent and obvious to one skilled in the art, and all equivalent relation-

**12**

ships to those described in the specification are intended to be encompassed by the present invention.

Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.

What is claimed as being new and desired to be protected by Letters Patent of the U.S. is as follows:

1. A cleanser composition consisting of:

from about 15 to 20 wt. % based on the total composition of a one to four carbon monohydric alcohol;

from about 0.05 to 3 wt. % based on the total composition of octoxynol-9;

from 20 to about 49 wt. % based on the total composition of an inorganic salt, at least a portion of which is in crystalline form; and water.

2. A cleanser composition consisting of:

from about 15 to 20 wt. % based on the total composition of a one to four carbon monohydric alcohol;

from about 0.05 to 3 wt. % based on the total composition of octoxynol-9;

from 20 to about 49 wt. % based on the total composition of an inorganic salt, at least a portion of which is in crystalline form;

from about 0.01 to 2.0 wt. % based on the total composition of a fragrance; .

from about 0.01 to 2.0 wt. % based on the total composition of a dye; and

from about 40 to 70 wt. % based on the total composition of water.

3. A method for removing organic deposit from a surface of a smoking device, the method comprising:

forming a cleanser composition by combining (a) a one to five carbon monohydric alcohol, (b) an inorganic salt, and (c) water, in such proportions that at least part of said inorganic salt remains in crystalline form;

exposing the smoking device to the composition under agitation for about twenty seconds to two minutes; and

removing the composition and removing organic deposit from the smoking device.

4. A method as in claim 3, wherein said agitation is carried out for a period of from twenty seconds to one minute.

5. A method for removing organic deposit from a surface of a solid article, the method comprising:

forming a cleanser composition by combining (a) a one to five carbon monohydric alcohol, (b) an inorganic salt, and (c) water, in such proportions that at least part of said inorganic salt remains in crystalline form;

exposing the solid article to the composition under agitation for about twenty seconds to two minutes; and

removing the composition and removed organic deposit from the solid article wherein said cleanser further includes octoxynol-9.

\*   \*   \*   \*   \*

EXHIBIT "C"

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, PATENT INVALIDITY,
MISUSE OF PATENT, FEDERAL STATUTORY UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION,
INTERFERENCE WITH BUSINESS RELATIONS, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
AND DEMAND FOR JURY TRIAL
- 16



# FACTS ABOUT SALT

☐ **History**
☐ **Production**
☐ **Uses**

*This booklet has been prepared by the Salt Institute to briefly relate the fascinating story of salt through the ages.*

*Salt's history, production and uses are told with just enough detail to answer most common questions and to provide general information on salt. We believe you will find it interesting reading.*

*Published by the*



**Salt Institute**

™

*700 North Fairfax Street, Suite 600, Alexandria, Virginia 22314-2040*

Printed In U.S.A.

**Whipping cream and beating egg whites** ◆ By adding a pinch of salt, cream will whip better and egg whites will beat faster and higher.

**Keeping milk fresh** ◆ Adding a pinch of salt to milk will keep it fresh longer.

**Setting gelatin** ◆ To set gelatin salads and desserts quickly, place over ice that has been sprinkled with salt.



# Cleaning



**Cleaning brass** ◆ Mix equal parts of salt, flour and vinegar to make a paste, rub the paste on the brass item, leave on for an hour or so, then clean with a soft cloth or brush and buff with a dry cloth.

**Cleaning wicker** ◆ To prevent yellowing, scrub wicker furniture with a stiff brush moistened with warm saltwater and allow to dry in the sun.

**Cleaning piano keys** ◆ Place salt and lemon juice on a soft cloth and rub the cloth on piano keys to remove stains. The same treatment can be given to ivory and marble.

**Cleaning grease spots on rugs** ◆ Some grease spots can be removed with a solution of one part salt and four parts alcohol and rubbing hard but carefully to avoid damage to the nap.

**Extending broom life** ◆ New brooms will wear longer if soaked in hot saltwater before they are first used.

**Removing wine stains** ◆ If wine is spilled on a tablecloth or rug, blot up as much as possible and immediately cover the wine with salt, which will absorb the remaining wine. Later rinse the tablecloth with cold water; scrape up the salt from the rug and then vacuum the spot.

**Removing rings from tables** ◆ White rings left on tables from wet or hot dishes or glasses can be removed by rubbing a thin paste of salad oil and salt on the spot with your fingers, letting it stand an hour or two, then wiping it off.

**Restoring sponges** ◆ Give sponges new life by soaking them in cold saltwater after they are washed.

EXHIBIT "D"



Copyrighted Material

# 110 Surprising and Ingenious Household Uses for

# SOLVE IT WITH SALT

**RELIEVE DRY SKIN**

**CLEAR SINUSES**

**REMOVE BURNS FROM COOKWARE**

**ELIMINATE ODORS**

**POLISH COPPER AND BRASS**

**BRIGHTEN SILK FLOWERS**

**PATCH WALLS**

**PLUS 103 MORE USES**

Copyrighted Material

Copyright © 1998 by Patty Moosbrugger
All rights reserved. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or by any information storage and retrieval system, without permission in writing from the publisher.

Published by Three River Press, a division of Crown Publishers, Inc., 201 East 50th Street, New York, New York 10022. Member of the Crown Publishing Group.

Random House, Inc. New York, Toronto, London, Sydney, Auckland
www.randomhouse.com/

Three Rivers Press and colophon are trademarks of Crown Publishers, Inc.
Design by Howard P. Johnson
Printed in the United States of America

Library of Congress Cataloging-in-Publication Data

Moosbrugger, Patty.
    Solve it with salt : 110 surprising and ingenious household uses for table salt / Patty Moosbrugger. — 1st ed.
      p.    cm.
    Includes bibliographical references and index.
    1. Home economics.  2. Salt.  1. House cleaning.  I. Title.
  TX158.M66  1998
  640'.41—dc21                            97-32775
                                                   CIP

ISBN 0-609-80234-8 (pbk.)

10 9 8 7 6

Copyrighted Material

Copyrighted Material

## SALT: THE HOUSEHOLD ALTERNATIVE

sinks and on easily scratchable kitchen countertops. Add 1 cup salt to 1 cup baking soda and blend well. Store in a covered container and keep on hand with your other cleaning supplies.

## GREASE SPOTS ON RUGS

*I*f you have a problem with messy kids or Sunday couch potatoes who are prone to knocking over greasy food on the rug, table salt can be an effective de-greaser that can get your rug back to normal. The cleaning solution can be made by mixing 1 part salt to 4 parts rubbing alcohol. Take the mixture and rub it hard over the spot, but be careful to rub in the direction of the natural nap of the rug while cleaning the stain so as to avoid damaging the nap.

## SPILLED KETCHUP ON NYLON CARPETING

*K*etchup or other tomato sauces can be really stubborn stains to remove from ordinary carpeting. Salt can help prevent the stain from permanently seeping into the rug. As soon as possible after the tomato sauce is spilled, sprinkle carpeting with enough salt to soak up the stain. Remove the

Copyrighted Material

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**
**NOV 06 2006**
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**I (a) PLAINTIFFS**
MATTHEW GREEN

**DEFENDANTS**
GUSTAVO GONZALEZ;
SUPERIOR CLEANING

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** GAINESVILLE, FLA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
GARY L. EASTMAN
707 BROADWAY, STE 1800
SAN DIEGO, CA 92101  (619)230-1144

**ATTORNEYS (IF KNOWN)**

'06 CV 2453 W   LSP

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | • 1 | • 1 | Incorporated or Principal Place of Business in This State | • 4 | • 4 |
| Citizen of Another State | • 2 | • 2 | Incorporated and Principal Place of Business in Another State | • 5 | • 5 |
| Citizen or Subject of a Foreign Country | • 3 | • 3 | Foreign Nation | • 6 | • 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT  35 U.S.C. §§ 1 et seq;

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reappointment |
| • 120 Marine | 310 Airplane | • 362 Personal Injury-Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| • 130 Miller Act | 315 Airplane Product Liability | | 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| • 140 Negotiable Instrument | 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment &Enforcement of Judgment | 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | X 830 Patent | 460 Deportation |
| • 151 Medicare Act | 340 Marine | | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| | | • 370 Other Fraud | 690 Other | 861 HIA (13958) | 850 Securities/Commodities Exchange |
| • 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle | • 371 Truth in Lending | **LABOR** | 862 Black Lung (923) | |
| | 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 875 Customer Challenge 12 USC |
| • 160 Stockholders Suits | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 891 Agricultural Acts |
| • 190 Other Contract | 360 Other Personal Injury | • 385 Property Damage Product Liability | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| • 195 Contract Product Liability | | | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 740 Railway Labor Act | 870 Taxes (U.S. Plaintiff or Defendant) | 894 Energy Allocation Act |
| • 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 790 Other Labor Litigation | 871 IRS - Third Party 26 USC 7609 | 895 Freedom of Information Act |
| • 220 Foreclosure | 442 Employment | | 791 Empl. Ret. Inc. | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | Security Act | | |
| • 240 Tort to Land | 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State |
| • 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| • 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

- X Original Proceeding
- 2 Removal from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
- CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND X YES • NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE

Docket Number

DATE NOV 3, 2006

SIGNATURE OF ATTORNEY OF RECORD

131387  SL $350  11/7/06

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

UNITED STATES
DISTRICT COURT
Southern District of California
San Diego Division

# 131387 - A1
November 7, 2006

| Code | Case # | Qty | Amount |
|------|--------|-----|--------|
| CV006900 | 3-06-CV-2453 | | 60.00 CA |
| Judge | - WHELAN | | |
| CV006900 | | | 100.00 CA |
| CV510000 | | | 190.00 CA |

Total -> 350.00

FROM: CIVIL FILING
      MATTHEW GREEN V. GUSTAVO
      GONZALEZ ET AL
      3CV 26651  SP